Symmes *v.* Major.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for further proceedings.

---

## SYMMES *v.* MAJOR.

ATTORNEYS—PRACTICE.—Attorneys can not withdraw their appearance in a cause without the permission of the Court, and, if it is withdrawn, and the record on appeal is silent as to the ground of withdrawal, this Court will presume it was done upon satisfactory evidence presented to the inferior Court.

WAIVER—PRACTICE.—In an action in attachment against husband and wife, the latter being insane and over twenty-one years of age, a personal appearance by the husband, and an appearance by the wife with her husband, and also by her general guardian, waives the necessity of publication, and such facts, appearing in the record on appeal, will obviate the necessity for any evidence of publication in the record.

Symmes *v.* Major.

GUARDIAN—COMMITTEE.—A ·general guardian of an insane person, under our statutes, is substantially the committee of such person, and is the proper party to appear for her without any special order of the Court.

PRACTICE IN SUPREME COURT.—Where an appearance is entered in the inferior Court, and is never withdrawn, and an appeal is taken to this Court, and the judgment below is reversed and the cause remanded, and, after proceedings there, another appeal is taken to this Court, this Court will judicially know what attorneys have appeared in the cause.

APPEAL from the *Ohio* Circuit Court.

PERKINS, J.—Prior to the *August* term of the *Ohio* Circuit Court, 1858, *James S. Jelly, Esq.*, procured an attachment of certain property of *Hannah B. Symmes,* upon a writ issued from the clerk's office of the above named Circuit Court. At the *August* term, 1858, of said Court, he obtained judgment. *Peyton S. Symmes,* the husband of *Hannah,* was made a co-defendant with her in the attachment suit. *Samuel Seward, William S. Holman* and *Daniel S. Major* severally filed claims under the attachment proceedings of *Jelly,* and obtained judgments at said *August* term. The claim of *Major* was for professional services rendered by him for said *Hannah* touching her separate property in *Ohio* county, *Indiana,* which was attached. The record recites that the Court was satisfied that publication had been duly made, but no copy of it appears. Afterwards, at the *February* term, 1859, this entry appears of record, viz :

Comes *Henry E. Symmes,* who, it is admitted by the parties, has been legally appointed the guardian of the said *Hannah B. Symmes,* an insane person, and also the said *Peyton S. Symmes,* by *A. C.* and *H. A. Downey,* their attorneys, and the plaintiffs in said causes come also, and by agreement of said parties, it is ordered and adjudged by the Court that the judgments in said causes rendered in this Court, on the 11th

day of *August*, 1858, shall be and they are opened, and said defendants allowed to defend; and it is further ordered, that these cases shall proceed in the name of the said *Peyton S. Symmes*, and the said *Hannah B. Symmes* by said *Henry E. Symmes* as her guardian, as defendants.

Afterwards, the cause of *Major* against the *Symmeses* was continued.

Afterwards, at the *August* term, 1859, the parties came, says the record, and the plaintiff, pursuant to leave given, amended his complaint, making *Henry E. Symmes*, as guardian of *Hannah*, defendant, with *Peyton S. Symmes*. The defendants thereupon filed their joint demurrer to the amended complaint; the demurrer was sustained, and there was final judgment for the defendants. The plaintiff appealed from that decision to the Supreme Court, where the judgment below was reversed, and the cause remanded for further proceedings. That decision is reported in 19 Ind. p. 117. Both parties appeared by counsel in the Supreme Court—the *Symmeses* by *Messrs. McDonald & Roache*. At the *February* term of the *Ohio* Circuit Court, in the year 1863, the cause again appeared upon the docket of that Court, and was called for issue; whereupon the death of *Peyton S. Symmes* was suggested; the demurrer to the complaint was overruled; "and now, says the record, *A. C.* and *H. A. Downey*, attorneys for defendants, come and say that they have been discharged from further acting herein as attorneys for defendants, and refuse to further appear or answer." As attorneys can not withdraw their appearance in a cause without permission of the Court, and the Court permitted it in this case, we must presume that satisfactory evidence was furnished the Court of the discharge of the *Messrs. Downey*.

Judgment was then rendered against the defendant by default, with an order for the sale of the attached property, &c.,

upon proof of the claim of the plaintiff, as if the general denial had been in.

At the *August* term, 1863, *Henry E. Symmes*, guardian, &c., appeared in the *Ohio* Circuit Court, by *A. Brower*, his attorney, and moved to set aside the judgment by default at the previous *February* term, and filed the affidavit of one *Charles L. Colburn* in support of his motion.

*Major* demurred to the causes set forth for vacating the judgment; the Court sustained the demurrer, and dismissed the motion. *Symmes* appealed to this Court. Two questions are presented.

1. Was the judgment by default regular?

2. If so, was sufficient cause shown to set it aside?

At the time the attachment was taken out, *Mrs. Symmes* was a sane woman, and her husband was joined with her as a defendant. There was property in the county subject to the attachment, and the property was attached. So far the proceedings were regular. Notice by publication does not appear in the record. If there was an appearance, that cures the want of a copy of the notice in the record. Was there an appearance? It is not denied that *Peyton S. Symmes*, the husband, and *Henry E. Symmes*, the guardian, of *Hannah B. Symmes* as an insane person, appeared to the suit. It is not denied that they employed the *Messrs. Downey* to defend the suit for them. But it is claimed that the appearance of *Henry E. Symmes*, under the name of guardian, was no appearance, because an insane person must appear by committee.

We are not now required, in the view we take of this case, to decide that an insane *femme covert*, over twenty-one years of age, must appear by guardian or committee.

The code provides (1 G. & H. 375,) that, "all suits relative to such lands [the separate property of the wife] shall be prosecuted by or against the husband and wife jointly, or if they be separated, in the name of the wife alone, and in case

of such separate suit, the husband shall not be liable for costs." The code further provides, (2 G. & H. p. 41) that "in no case shall the wife be required to sue or defend by guardian or next friend, except she be under the age of twenty-one years."

Nor, if an insane married woman must appear by guardian or committee, are we now called upon to say by which. At page 93 (2 G. & H.) it is provided, that "it shall be duty of the guardian of an infant or committee of a person of unsound mind, or attorney appointed for a prisoner, to file an answer, denying the material allegations of the complaint, prejudicial to such defendant, without oath." At p. 335 of the same volume, it is enacted, that "the phrase of *unsound mind* includes idiots, *non compotes,* lunatics, and distracted persons." And at page 37 of the same volume it is enacted, that "it shall not be necessary to make an idiot or lunatic a joint party with his guardian or committee, except as may be required by statute."

The proposition we lay down for the decision of this case is, that *Hannah B. Symmes* appeared with her husband, and in addition, by both her guardian and committee. That she appeared with her husband, and that she appeared by her general guardian, there is no dispute. It remains to show that she appeared by her committee.

Who or what is a committee? Our statute does not define the office or officer; in common law practice no such officer is known, and our statute no where prescribes the mode of appointing a committee. In equity, as a part of the common law, such an officer is known, and his powers and duties are defined. In a note to Daniel's Chancery Practice, vol. 1, Perk. ed., p. 105, the language of Chancellor *Kent,* in *Ortley* v. *Messere,* 7 John. Ch. Rep. 139, is quoted thus: "The committee have the exclusive custody and control of the estate and rights of the lunatic." And in the same volume of Daniel, at page 165, it is said that the committee of a lunatic must be made a co-defendant with the lunatic, and why? be-

cause the property of the lunatic is in the custody of the committee. See, also, Voorhies' (N. Y.) Code, 3 ed. p. 149.

If, then, ..... the absence of a definition of a committee in our code, we go to the *English* law, we find that it is a person or persons who have the continuous guardianship of the person and estate of a lunatic, until lunacy is displaced by sanity. Now, our law creates just such an office but names the person who fills it, guardian. 2 G. & H. 573. The act touching insane persons provides that if, on the inquest, the person is found to be of unsound mind, "such Court shall appoint a guardian for such person, who shall have the custody of his person and the management of his estate," &c.—just the powers of a committee by the *English* law. Substantially, then, *Henry E. Symmes* was the committee of *Hannah B. Symmes*, and the proper person to appear with her without any special order of the Court.

But the committee spoken of in our statute we can inferentially make out to be simply a person appointed by the court to conduct a given suit, a person with precisely the powers and duties of a guardian *ad litem* or *prochien ami*. See the sections of the statute above quoted. Now, how would the Court appoint such a committee? Why, upon the suggestion of a proper person by some one interested. Who could more properly make the suggestion than the husband and general guardian of a person, or her attorneys? And who would more properly be the person to conduct a given suit than the general guardian? If, then, the Court appointed the general guardian to conduct a particular suit, and the law says the person so appointed is the committee of the lunatic, then, the lunatic in this case appeared by committee in contemplation of law, no matter what misnomer occurred on the part of the Court in designating such person, or whether any designation was made by name or not. We are satisfied there was a proper appearance in the case, which waives the necessity of

publication. That appearance was never withdrawn. It was continued in the Supreme Court by *Messrs. McDonald & Roache* as successors to the *Messrs. Downeys*. This we know, judicially, because this is one continuous suit before us for the second time, and the whole cause is in the present transcript, including the previous opinion of the Supreme Court. This Court judicially knows what attorneys appear before it in a pending cause.

On the return of the cause to the *Ohio* Circuit Court, the *Messrs. Downeys* did not assume to withdraw the appearance of the *Symmeses*, but only to retire from the cause themselves, because they had been discharged by *Symmes*, who was a party before the Court.

The judgment below can not be reversed for any thing appearing upon the face of the record.

But, as we have seen, at the term succeeding that at which the judgment was rendered, *Mr. Brower* appears as attorney for *Symmes*, and moves to vacate the judgment, and files the affidavit of *Mr. Colburn* in support of it. The motion of *Mr. Brower* is overruled; and he retires from the cause, and is succeeded by *Messrs. McDonald & Porter* in this Court, to which the cause is, a second time, appealed; the second appeal being from the refusal of the Court below to vacate the judgment on the motion and grounds above stated.

Was cause shown, upon the motion, such as made it the duty of the Circuit Court to vacate a judgment by default, as we have seen, regularly rendered?

It has been earnestly contended that the ruling of an inferior Court upon a motion to vacate a judgment by default, made after term, is not subject to review or appeal, and there are authorities to that effect. See note to *Carlisle* v. *Wilkinson et ux.*, 12 Ind. 91. The point was not decided in that case, and need not be in this, because this does not present so plain a case of abuse of discretion as to require the interpo-

sition of the Court, conceding it to have the power of inter-position, which this Court has, in other cases, assumed to ex-ercise. Here a judgment had been obtained in 1858, when *Mrs. Symmes* was sane. Six months afterwards that judg-ment was opened. A demurrer was filed to the cause of action. The Supreme Court decided the cause of action valid. The party neglects to further appear and resist a judgment. A judgment is regularly rendered against him. Six months afterwards he again comes in and asks to have it vacated, on what are claimed to be irregularities in practice in obtaining it, without denying, in the affidavit filed by an agent, that the cause of action on which the judgment rests is valid. We think a case is not made for setting aside the judgment. The circumstances of each case may influence the discretion of the Court. *Frazier* v. *Williams,* 18 Ind. 416.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

*McDonald & Porter,* for the appellant.

*D. S. Major* and *McDonald & Roache,* for the appellee.