JOHN VAN HORN v. JONATHAN HANN, ADMINISTRATOR. OF SARAH SEARCH.

In an action brought against the administrator of a lunatic for necessaries furnished to the lunatic before and during the period of derangement—*held,*

1. An action will lie against the lunatic while living, and afterwards against the representative.
2. An action will not lie against the guardian.
3. The lunatic, if personally sued, must appear by attorney. Practice as to manner of appointment of attorney.

This is an action originally brought in the Common Pleas of Warren, against the administrator of a lunatic.

The claim was for board, lodging, &c., of the lunatic from June 9th, 1873, to October 22d, 1873.

There was offered in evidence, on the trial, proceedings upon a commission of lunacy, the return to which was a finding, dated October 14th, 1873, that said Sarah Search was a lunatic and had been such for three and a half months previous to that date.

It appeared also that upon the 10th of November following, upon transmission of the proceedings to the Orphans' Court of Warren county, a guardian was appointed.

Sarah Search subsequently died, under guardianship, and the defendant was appointed administrator.

After a year had elapsed, this action was brought.

On the trial, the court charged the jury " that the plaintiff was entitled to recover from the 9th day of June until the 29th of the same month." The three and a half months reached back to the last date.

That after the time when she was declared a lunatic, her administrator was not liable for any debt for her support.

That the plaintiff must look to the guardian for her support from June 29th until her decease.

A verdict was found in accordance with such charge. An exception was sealed to this charge.

Argued at November Term, 1876, before BEASLEY, CHIEF JUSTICE, aud Justices SCUDDER, DIXON and REED.

For the plaintiff, *R. S. Kuhl.*

For the defendant, *L. H. Sergeant.*

The opinion of the court was delivered by

REED, J.    There is no contention in this case that no right at all to recover, accrued to the party who furnished the food and lodging to the lunatic.

The claim seems to be for necessaries fairly furnished, and affords an exception to the general rule as to the inability of a lunatic to bind himself by contract.  *Baxter* v. *Earl of Portsmouth*, 5 *Barn. & Cress.* 170; *Ewell's Lead. Cas.* 635, note ; *Am. Law Reg.*, vol. II. (*N. S.*) 22, *notes.*

The ruling of the court touches the manner in which this claim may be secured.   The idea of the court below was, that for any claim against the lunatic, arising after the beginning of the period of derangement found by the inquisition, recovery must be sought only through the guardian ; but for a claim accruing previously, an action would lie against the lunatic himself.

It is difficult to understand upon what principle this claim can be severed at that point of time, and a different method of redress suggested for each portion.    Each part is a debt of equal obligation upon the lunatic and his estate.

No provision is made by law for the payment of one class of debts and not of another.    This claim is all admittedly a debt of the lunatic, and a single method of redress should obviously be afforded to the creditor.    The question is, was this action at law against the administrator of the lunatic, the correct method ?    Has the creditor a right of action at law for this claim ?    That the lunatic was suable at law for his debts, was a well-established rule of the common law.    *Broom on Parties* 182; *Dicey on Parties* 2.

Nor did the fact that a writ *de lunatico* had gone, and a

finding had been returned upon it that the defendant was insane, change the rule. *Anonymous*, 13 *Ves.* 590. It appears from the statement in Baxter *v.* Earl of Portsmouth, that there had been such a finding in that case.

Nor did the fact that a committee had been appointed by the Chancellor, operate to prevent the bringing or arrest the progress of such an action.

When actions were commenced against a lunatic, so found by inquisition, the Lord Chancellor, on petition of the committee of the lunatic, showing that there were grounds for defending, would refer it to a master to inquire whether it would be proper to make any and what kind of a defence. *Shelford on Lunacy* 408.

It was not only well settled that an action lay against a lunatic, whether he was or was not under guardianship, but it was the only method open for the recovery of a contested claim against him by suit. No action at law or suit in equity could be maintained against the committee. The committee was the mere curator of the property of the lunatic. He could make no contracts which bound the latter in any manner. The committee was appointed by the Chancellor. He made the appointment not *ex virtute officio*, but by delegation of power from the crown. The king, by the statute *de prœrogativa regis*, (17 *Ed. II.*, *st.* 2, *ch.* 610,) was bound to provide for the safe keeping of the property and the maintenance of the lunatic. He was compelled to do this by agents, and he delegated the appointment of these agents to the holder of the great seal. These agents were termed committees, and were merely the receivers or bailiffs of the crown. As such, they were controllable by and accountable to the Chancellor as keeper of the king's conscience. They had no title in the property of the lunatic. They could not contract for the lunatic. They could not sue or be sued as the representative of the lunatic.

Nor could a suit in equity be sustained for such a claim. It is true that where there was a debt against the lunatic admittedly owing, the Chancellor would entertain a petition to

establish it, and provide for its payment out of the proceeds of the lunatic's estate not needed for his maintenance. Even to accomplish this, the Chancellor had no right to sell any real estate of the lunatic until that authority was given him in 1803, by the statute of 43 *Geo. III.*

The collection of debts or the establishment of such as were the subject of controversy, was not within the scope of equity jurisdiction.

We therefore will see that the Court of Chancery, either before or after the statute of *Geo. III.*, would not retain a petition to establish any alleged debt against the lunatic which was controverted, or concerning which there was a doubt, but would send the matter to a common law tribunal. *Ex parte McDougal,* 12 *Ves.* 384.

While the Chancellor would not order a debt, although undisputed, to be paid without reserving sufficient to maintain the lunatic, and would not take cognizance of a contested matter of debt at all, yet the right of action against the debtor himself in a court of law, was constantly admitted. In instances where the court refused to apply property to the lunatic's debts, on account of the insufficiency of the remainder for his support, the court admitted that all the lunatic's property could be reached by the process of the common law courts, and that equity would not restrain. *Ex parte Dikes,* 8 *Ves.* 79 ; *Ex parte Hastings,* 14 *Id.* 182.

And the right to sue the lunatic himself, at law, is, in all the cases at common law, alluded to as a settled practice, and as not presenting a matter for discussion. *Ibbotson* v. *Lord Galway,* 6 *T. R.* 133 ; *Steel* v. *Alan,* 2 *Bos. & Pul.* 362 ; *Cock* v. *Bell,* 13 *East* 355.

This was, then, the method of procedure at common law. Nor is there any marked departure from that method discoverable in this country. The schemes for the care of the person and property of the lunatic vary somewhat in the different states, but very generally the character of the committee or guardian here is assimilated to that of the committee under the English system. In New York, there is a departure by

force of the construction given to their statute. Chancellor Kent decided that in that state, the estate in the hands of the committee was, by their statute, placed in the possession of the court, not only for the maintenance of the lunatic, but for the payment of creditors. *Brashear* v. *Cortland*, 2 *Johns. Ch.* 401.

So courts of equity will there restrain actions at law. *Matter of Hiller*, 3 *Paige* 199 ; *Soverhill* v. *Dickson,* 5 *How. Prac. Rep.* 109.

The courts of law there, however, take no notice of this, but leave the equity side to deal with the party. In an action at law, the *status* of the defendant, as a lunatic, cannot be urged against the proceeding. *Robertson* v. *Lain*, 19 *Wend.* 650.

Generally, in this country, the character of the committee or guardian as a mere curator without title in the property of the lunatic, his immunity from liability to an action and the liability of the lunatic himself to such an action, is recognized by the courts. *Ex parte Leighton*, 14 *Mass.* 207 ; *Tomlinson* v. *Devore*, 1 *Gill* (*Md.*) 345 ; *Warden* v. *Eichbaum*, 3 *Grant's Cas.* 42 ; *Bolling* v. *Turner*, 6 *Rand.* 584 ; *Allison* v. *Taylor*, 6 *Dana* 87 ; *Aldrich* v. *Williams*, 12 *Vt.* 413 ; *Walker* v. *Clay*, 21 *Ala.* 797 ; *Cameron's committee* v. *Pottinger*, 3 *Bibb.* (*Ky.*) 11.

Nor does it matter whether the person appointed as curator of the person and property of the lunatic is styled committee or guardian. *Symmes* v. *Major*, 21 *Ind.* 443.

In this state, there is nothing in the policy of our law or in our statutes which renders a different rule obligatory or .desirable. The determination of the *status* of the alleged lunatic is here, as in England, upon a writ from chancery. Upon the return to that writ, it is true, the Chancellor does not appoint the guardian.

That duty, by statute, is thrown upon the Orphans' Court, as in England ; for a time it was upon the Court of Wards, and now, in most of the states, upon their probate courts.

Supervision of the guardian's accounts is vested in the Orphans' Court, with an appeal to the Ordinary.

The Chancellor may order the sale of lands where the interest of the lunatic requires it. *Rev., p.* 602, § 7. By the fourth section of this act, the Orphans' Court may sell real estate to pay debts.

This confers the same, and no greater power upon the Orphans' Court than the statute 43 *Geo. III.* upon chancery. There is no power to compel either to investigate and settle a questioned claim against the lunatic. Neither should assume the settlement of such a question.

Where the guardian chooses to present a debt against which there are no objections, the Orphans' Court can decree an allowance. Where the guardian refuses to notice it, there is no power in the courts to compel him to do so.

His position, in every respect, is substantially the same as the committee, and he is equally free from any liability to an action.

In such case, the only remedy afforded is an action against the lunatic himself. It was in recognition of this doctrine that the conclusion was reached in *Coombs* v. *Janvier et al.,* 2 *Vroom* 241, that the guardian of an habitual drunkard could not be sued. The Chief Justice said : " The statute places the drunkard, in regard to his relations to his guardian, very much on the same footing with the lunatic, and the legal *status* of the latter is well defined. Lunatics can sue and be sued, and the suits must be prosecuted in their own names."

In that case, the inconveniences arising from such an anomalous proceeding as an action against the guardian is forcibly presented, and attention is called to the section (12) of the act concerning lunatics, which recognizes the liability of the lunatic himself, by providing for his exemption from imprisonment for want of bail.

The conclusion, then, is reached, that for any legally contracted debt, incurred before or after his derangement, the lunatic is liable to an action at law.

A question arises, incidentally, as to the manner in which such a defendant should be brought into court, and how he should defend. A word as to the practice may be of use, as it seems untouched by any previous intimation of our courts.

The common law rule is, that a lunatic defends in the same manner as ordinary persons. Process is served upon him personally; then, if an infant, he appears by guardian, and if of full age, by attorney.

This rule seems as old as *Beverly's case*, 4 *Coke* 124, *b*. See *Tidd's Prac., vol. I., p.* 93, *note b;* 1 *Arch. Prac.* 25; 2 *Saund.* 333, *n.* 4, and cases cited in *Combs* v. *Janvier, ante.* This was the rule in actions at law.

In suits in equity, the practice is different. In those, the lunatic defends by guardian *ad litem*, and his committee is appointed such guardian as of course, (*Westcomb* v. *Westcomb*, 1 *Dick.* 233,) unless there is no committee, or the committee is, in interest, adverse to him in the suit. *Shelford* *425; *Morgan's case*, 2 *Bland.* 184. There a third party is appointed.

A failure to notice this diversity of procedure, or the blending of the two in the same courts, has caused, in one or two states, an allusion to a practice of defending by guardian *ad litem* in all cases—*notes to Leach* v. *Marsh, Am. L. R., vol. II., (N. S.)* 31—and in one state he so defends by statutory direction. *Symmes* v. *Major*, 21 *Ind.* 443. The common law method, however, was uniform and unquestioned, and has never been departed from in this country, wherever the courts have had occasion to consider it directly. *Faulkner* v. *McClure*, 18 *Johns.* 134; *Buchanan* v. *Rout*, 2 *T. B. Monroe* 114; *Amos* v. *Taylor*, 2 *Brev. S. C.* 20; *Barbour on Parties.*

Who can appear as his attorney? It is manifest that the lunatic himself has no capacity to appoint. His want of natural ability, as well as the implied prohibition in Section 15 of the practice act, forbids it.

It naturally follows that the person who appears as the attorney should be selected or approved by the court.

This was the rule adopted by the Supreme Court of New York, in the case of *Faulkner* v. *McClure*, 18 *Johns.* 134. In that case, the court granted a rule appointing the attorneys of the defendant.

I think this is the correct practice, and I think that where the defendant is under guardianship, the rule should never be granted until notice to such guardian has been given of the application for the rule, and an opportunity for hearing him afforded.

In this case, this question does not directly arise. The decease of the lunatic, before the institution of the present action, rendered the course of procedure plain.

Upon her death, any exceptional treatment which she or her estate was entitled to or subject to as a lunatic, ceased.

The duty of the guardian, beyond accounting and paying over the balance to her personal representatives, ceased. 1 *Collinson* 310; *In re Colvin*, 3 *Md. Ch.* 278. By statute 32 *Hen. VIII*, all personal property of the lunatic was then payable to his executor or administrator. 1 *Collinson* 320, § 11.

The personal representative of the lunatic was suable, as the deceased herself was, subject to the statutory regulations. She, herself, was liable. The action was for a debt legally incurred.

The instruction to the jury, that a part could not be recovered in this action, was erroneous, and the judgment must be reversed.