VICTOR S. H. WALDRON, DEFENDANT IN ERROR, v. MARY E. DAVIS, ADMINISTRATRIX, &c., PLAINTIFF IN ERROR.

Submitted March 22, 1904—Decided June 20, 1904.

1. Services such as are particularly described in this opinion, rendered in caring for, nursing and ministering to the health and comfort of a lunatic, belong to the class of "necessaries" which are recoverable against the lunatic, and, after her death, against her estate.

2. Where a person, boarding with and in the care of another under an express agreement fixing the monthly rate of pay therefor, becomes insane, the element of mutuality requisite to continue in force the old, as well as to give vitality to a new agreement, *ipso facto*, ceases to exist, but the law will imply a liability on the part of the lunatic to pay, upon *quantum meruit*, for the reasonable value of her subsequent board and care, as well as for additional services performed for her benefit and necessitated by such change.

3. When the original relationship between such parties was that of debtor and creditor, recognized before insanity supervened by the payment and receipt of money on account of such indebtedness, the law will not presume that the additional services afterwards rendered to the lunatic were intended as a gratuity.

On error to the Supreme Court.

Action by Victor S. H. Waldron against Mary E. Davis, administratrix of the estate of Eliza VanNorden, deceased. Judgment for plaintiff, and defendant brings error.

For the plaintiff in error, *Crouse & Perkins*.

For the defendant in error, *Isaac S. Taylor*.

The opinion of the court was delivered by

VREDENBURGH, J.   Under the findings of fact and of law of the trial judge in this cause, a jury having been waived, final judgment was awarded the plaintiff below for the balance of principal money, with interest, as claimed by the

plaintiff and specified in the bill of particulars. The declaration was in contract upon the common counts, and the account as claimed was thus particularized, viz.:

"(1) To board and care of said Eliza VanNorden, deceased, from October 1st, 1893, to October 1st, 1898, 260 weeks, at $4.25 per week=$1,105.00; (2) to board and care of Eliza VanNorden, deceased, from October 1st, 1898, to date of her death, March 13th, 1902, 179 weeks and 2 days, at $5.00 per week=$896.43; total, $2,001.43."

Against these charges were credits, given for payments made on account, of $1,426.75.

The only plea filed was the general issue in *assumpsit*. The plaintiff's evidence at the trial (and there was none other offered) exhibited an express contract, made in October, 1893, between the original parties, under which the board and lodging of the deceased was agreed upon at a fixed price. The evidence showed that the deceased boarded with the plaintiff from October, 1893, until the summer of 1898, making monthly payments on account of her board under the contract proved, and then visited her sister until October, 1898, when she returned to the plaintiff's house. Upon her return a great change, both in her body and mind, was apparent. The evidence clearly shows, and the trial judge found, that the deceased had become *non compos mentis*. While no inquisition was had, nor office found, it is clear from the evidence, and must be conceded, that after October 1st, 1898, at least, the deceased became insane. To this mental disorder the physical affliction of cancer was added, and her condition, both mentally and physically, necessitated constant and exacting care and services toward her on the part of the plaintiff. A short extract from the very full testimony on this subject will show that the services rendered, and the care given to the deceased by the plaintiff, both before and after October 1st, 1898, belonged to a class which in law are properly denominated "necessaries." A witness in the plaintiff's household testified that "she [the deceased] couldn't be left alone, and we didn't leave her

alone for a number of years—for five years—and never left her alone night and day. * * * Then, gradually, she became worse and soiled the rooms—the carpets in four rooms—and the hall, besides her own room; spoiled them, ruined them, and destroyed some of the furniture. * * * She became violent and couldn't care for herself; had to be attended to—dressed, and so forth, washed and cared for—and she became very noisy and troublesome at the table and in the house, so that no other boarders could be had because of her constant noise and disturbance. * * * In caring for her, if she was soiled and we wished to remove her clothing, it would often take two to handle her, because she would kick so; she would fight and scratch and pull hair; * * * one had to hold her feet while the other would get her clothes off."

The counsel of the plaintiff in error did not contend, upon the motion for a nonsuit in the court below, nor does he in this court insist, that the deceased, after October 1st, 1898, was sane, nor that the extra services performed were not necessary to be done for her health and comfort; but the insistment is that no recovery for any sum in excess of that agreed upon can be had on an implied contract to pay for the reasonable worth of such additional services, because the express contract proved excludes an implied contract—or, to use the words of the brief—"an express contract was in existence covering the entire subject-matter of the suit." But this contention ignores the important change in the contractual relations of the parties, which the intervention of the insanity of one of the contracting parties accomplished. After that occurred the express mutual agreement no longer continued in force. The authorities are all in such accord upon this head that citation is uncalled for. After that event deprived the parties, not only of their power to keep in force the prior mutual agreement, but also of their legal ability to enter into any new one, the law implied a liability on the part of the lunatic (which became binding, after her

death, also upon her estate) to pay, upon *quantum meruit,* what such "necessaries" were reasonably worth. This principle, also, is so well sustained by authority of both textbook and reported cases, that I shall only cite a few of the most pointed, viz.: *Van Horn* v. *Hann,* 10 *Vroom* 207; *Hallett* v. *Oakes,* 1 *Cush.* 296; *Kendall* v. *May,* 10 *Allen* 59; *Richardson* v. *Strong,* 13 *Ired.* 106; *Pearl* v. *McDowell,* 3 *J. J. Marsh.* 659; 1 *Ad. Cont.* (*2d Am. ed.*) 236.

In the case of *Richardson* v. *Strong, supra,* the action was *assumpsit* on *quantum meruit* for work and labor, being for the services of a nurse for a madman and of a guard to protect him from a propensity to destroy himself, and the North Carolina Supreme Court held that "where a person is insane, so as to attempt injury to himself or the destruction of his property, the services of a nurse and guard fall within the class of necessaries as defined by law." The finding of the trial judge as to the value of the services rendered by the plaintiff after October 1st, 1898, in the care of the deceased, is not here reviewable, nor indeed has the correctness of his finding upon that subject been questioned by the counsel of the plaintiff in error. The further point, made in the brief of the plaintiff in error, that "a family relation existed between the plaintiff and defendant's intestate, and that no implied *assumpsit* will arise for extra services," is antagonized by the fact that the parties had always dealt with each other as debtor and creditor, and the intestate, before she became insane, had made many payments of money on account of an indebtedness to the plaintiff for her board and lodging, which she had thus conclusively recognized. This fact serves, in the absence of evidence to the contrary, to negative any presumption which otherwise possibly might have arisen that the subsequently continued additional services were rendered as a gratuity. No plea of the statute of limitations having been interposed the effect of that statute upon the claim cannot be considered; but even if it had been properly set up the payments of money

made by intestate, when applied to the earliest items, would have left the unpaid balance unaffected by the statute.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 13.

*For reversal*—None.