11 N.J. Super. 390 (1951)
78 A.2d 441
THE HILLSDALE NATIONAL BANK OF HILLSDALE, NEW JERSEY, A NATIONAL BANKING INSTITUTION, PLAINTIFF-APPELLANT,
v.
JOHN SANSONE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1951.
Decided January 22, 1951.
*392 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Gordon Haviland Brown argued the cause for appellant (Mr. Harry Randall, attorney).
Mr. Joseph Grossman argued the cause for respondent (Messrs. Grossman & Kampelman, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
It is expedient in the introduction of the subject matter of this litigation to reproduce here the agreed statement of facts which accompanies the present appeal. Rules 1:2-22 and 4:2-6.
"1. The plaintiff-appellant is the holder of a promissory note in the amount of $1,158.48 made by the defendant-respondent.
2. The following is a true and complete copy of the note:
 `$1158.48 August 2, 1948 No. 7665
For value received, I/we the undersigned, jointly and severally, promise to pay to the order of Economizer Products, Inc. the sum of Eleven Hundred fifty-eight and 48/100 Dollars ($1158.48) as follows:
36 equal successive monthly installments of $32.18 each and a final installment of $ beginning September 15, 1948 and the remaining installments on the same date of each month thereafter until paid, with interest at 6 per cent after maturity, at the office of The Hillsdale National Bank, Hillsdale, New Jersey. For each dollar of payment in arrears more than five days, the undersigned promises *393 to pay to the holder hereof the sum of Five Cents as compensation for the damage and expense occasioned by such delay. We hereby waive demand notice and protest. In the event of the death, insolvency, bankruptcy or failure in business of any of the undersigned, or, in the event any installment of this note is not fully paid as herein specified, or in the event that any of the terms and conditions of a conditional sales contract dated as of even date between the maker(s) and the payee of this note are not fully complied with, this note shall, at the option of the holder hereof, become due and payable without demand and notice. We hereby agree in case of default to pay costs, including reasonable attorneys' fees, for necessary court process.
It is agreed that all principal payments on this note need not be endorsed upon this note, but are to be recorded on an individual liability record held at the above mentioned bank.
 JOHN SANSONE (seal)'
Endorsed on back of note:
`For value received, pay to the order of The Hillsdale National Bank, Hillsdale, New Jersey.
 ECONOMIZER PRODUCTS, INC. (Seal)
 BY MAURICE A. SILVER, PRES.'
3. The note was duly endorsed by the payee thereof and was negotiated to the plaintiff-appellant on or about August 31, 1948.
4. The plaintiff-appellant paid the sum of $950.00 for the note.
5. At the time the defendant-respondent made the note, he was insane.
6. The plaintiff-appellant received the note in good faith without notice of the insanity of the defendant-respondent and without notice of any facts indicating the insanity of the defendant-respondent.
7. The note was given in payment for an Economizer Bar Dispenser unit, which unit was sold and delivered under a conditional sales contract bearing the same date as the note.
8. The defendant-respondent never used the aforesaid unit and has offered to return the unit to the seller or to the plaintiff-appellant, and at the time of the trial, tendered himself ready, willing and able to return said unit to the aforesaid parties.
9. The defendant-respondent never ratified the conditional sales contract, or the note; and nothing has been paid on account of the note."
Final judgment was entered in favor of the defendant. 8 N.J. Super. 497 (Law Div. 1950).
There are four features of this case that attract our immediate observance. The one, that the article intended to be sold by the payee pursuant to the conditional sales agreement was not within the category of necessities. R.S. 46:30-8. Vide, Van Horn v. Hann, 39 N.J.L. 207 (Sup. Ct. 1877); Waldron v. Davis, 70 N.J.L. 788 (E. & A. 1904); Hurey *394 v. Leavitt, 93 N.J.L. 299 (Sup. Ct. 1919); In re Ganey, 93 N.J. Eq. 389 (Ch. 1921); affirmed, 94 N.J. Eq. 502 (E. & A. 1923). Another, that although the plaintiff had no knowledge of the defendant's mental incompetency, yet from the note itself it had knowledge that the instrument was associated with a contract. We do not resolve from the latter circumstance that the reference in the note to the conditional sales contract destroyed the negotiable character of the instrument. Superior Finance Corp. v. John A. McCrane, &c., Inc., 115 N.J.L. 401 (Sup. Ct. 1935); affirmed, 116 N.J.L. 435 (E. & A. 1936); see, Eastern Acceptance Corp. v. Kavlick, 10 N.J. Super. 253 (App. Div. 1950). It was, however, indicative to the plaintiff that the note originated from a contemporaneous contractual engagement in which the defendant had entered. Cf. General Contract, &c., Corp. v. Moon Carrier Corp., 129 N.J.L. 431 (E. & A. 1943). The third, that the defendant has not ratified either the sale or the note and has offered to return the property delivered to him. Vide, Miller v. Barber, 73 N.J.L. 38 (Sup. Ct. 1905). The fourth, that it is acknowledged that the defendant was insane at the time he executed the contract, and the note in suit, and that except for the absence of the appointment of a guardian we are to regard the stipulated fact of his insanity with the same significance as if it had been adjudicated.
Moreover counsel for both parties desire us to recognize the writing in suit as a negotiable instrument within the purview of our Negotiable Instruments Law (R.S. 7:1-1) and to determine whether the insanity of the maker of a promissory note in the stipulated circumstances is a defense against a bona fide holder in due course.
It has always been interesting to recall that Lord Coke in Beverley's Case, 4 Co. Rep. 123 b, 76 Eng. Reprint 1118 (King's Bench 1603), announced the rule that a lunatic could not be permitted by plea to show the invalidity of his acts because to do so would be to stultify himself. It is doubtful if that reasoning prevails in any jurisdiction at the present time. Parsons on Notes and Bills, § VI, p. 149. While the law may itself create by implication civil obligations, it seems *395 fantastic in recognition of the fundamental idea of a contract which requires the mutual and voluntary assent of two minds, a meeting of the minds, that such an indispensable element can exist in a transaction with a lunatic. We would more reasonably suppose that a person non compos mentis has nothing which the law recognizes as a mind. Dexter v. Hall, 15 Wall. 9, 21 L.Ed. 73 (U.S. 1873); P. Ballantine & Sons v. Gulka, 117 N.J.L. 84 (Sup. Ct. 1936); 17 C.J.S. 479, § 133 a.
Justice Story in his work on promissory notes stated: "every contract presupposes that it is founded in the free and voluntary consent of each of the parties, upon a valuable consideration, and after a deliberate knowledge of its character and obligation. Neither of these predicaments can properly belong to a lunatic, an idiot, or other person non compos mentis, from age, or imbecility, or personal infirmity. Hence it is a rule, not merely of municipal law, but of universal law, that the contracts of all such persons are utterly void." Story, Prom. Notes, 107, § 101.
To embark upon an exploration of the adjudications of more recent years and to discuss whether in the present nomenclature of the law, contracts of a lunatic should be catalogued as "void" with the several exceptions, or "voidable" somewhat akin to those of an infant, would be a time-consuming undertaking. Vide, Eaton v. Eaton, 37 N.J.L. 108 (Sup. Ct. 1874. Cf. Matthiessen, &c., Co. v. McMahon's Adm'r., 38 N.J.L. 536 (E. & A. 1876); 1 Williston (Rev. ed.) 739 et seq., §§ 250, 251. We accordingly confine ourselves to the consideration of the present case.
Singularly, there is a paucity of adjudications relative to the liability of an insane maker or indorser of a negotiable promissory note to a bona fide holder in due course under the Uniform Negotiable Instruments Law. We find none in our own state reports.
A reference to 28 Am. Jur. 691 et seq., §§ 55, 56, 8 C.J. 774, § 1040, 10 C.J.S. 1114, § 506 d, Beutel's Brannan Negotiable Instruments Law (7th ed.) 756 et seq., § 55, 1 Williston on Contracts (Rev. ed.), § 250 et seq., discloses *396 the editorial or commentators' views with citations of cases either decided before the enactment of the uniform act or inapplicable to the precise circumstances of the present case.
The decision of Chief Justice Williams of the Supreme Court of Ohio in Hosler v. Beard, 54 Ohio St. 398, 43 N.E. 1040 (Sup. Ct. 1896), displays a very deliberate consideration of the subject. It was therein determined that the insanity of the maker of a negotiable instrument is a defense against a holder in due course. In accord: 2 Paton's Digest 2001, 4D;4; Barnes v. McCarthy, 132 S.W. 85, 87 (Tex. Civ. App. 1900). It is noted that the latter decision, although rendered in 1910, preceded the adoption of the Uniform Negotiable Instrument Law in Texas. But see, Brumley v. Chattanooga, &c., Co., 198 S.W. 775 (Tenn. Sup. Ct. 1917). Anent extreme intoxication, Green v. Gunsten, 142 N.W. 261 (Wis. Sup. Ct. 1913).
Counsel for the appellant conceded at the argument that in the existing state of the admitted facts, if the instrument in its relation to the liability of the defendant is either void or voidable, the judgment for the defendant should be affirmed.
In considering the case in the light of the law merchant we decline to indulge in that concession. Our inquiry converges upon the question whether or not there existed a fundamental and intrinsic infirmity in the instrument which suffocated its legal vitality as a negotiable instrument.
It is not peculiar that in the growth of the commerce of England, Lord Mansfield manifested a serious interest in the development of the law merchant with particular concern for the rights of a holder in due course. With the expansion of both domestic and foreign trade and commerce throughout the world, the pragmatical use of instruments of a negotiable quality, approximating as closely as discreetly possible the efficiency of currency, became imperative.
The substantial object in the composition of the Negotiable Instruments Law which has been generally adopted was to codify and render uniform in some succinct fashion in statutory form the common law on the subject of such instruments.
*397 In the achievement of that object it is not reasonably to be assumed that the legislature of this or any other state, unless a contrary interpretation is evident, intended to abrogate a traditionally established humane principle of law and rule of civilized society. There is nothing in the statute expressly to import the conviction that a negotiable instrument of a lunatic, idiot, or insane person was intended to be converted into a valid contractual obligation.
True, the statute ordains that "A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." R.S. 7:2-57.
It sounds shallow to say that the Negotiable Instruments Law applies to negotiable instruments. But can a document executed by an insane person be recognized in the law as a contract, or as a will? So, can an instrument made by such a person be a negotiable instrument within the signification of the statutory or common law?
For illustration, if this defendant had made and delivered the note in payment of a gambling debt, our former Court of Errors and Appeals would have declared that it was not a negotiable instrument. "It had no life; no vitality." Fisher v. Brehm, 100 N.J.L. 341 (E. & A. 1924).
Had it been made by a married woman disabled by law from assuming the obligation, it would not have been a negotiable instrument. Woolverton v. Van Syckel, 57 N.J.L. 393 (E. & A. 1894); Vliet v. Eastburn, 63 N.J.L. 450 (Sup. Ct. 1899), on retrial, affirmed, 64 N.J.L. 627 (E. & A. 1900); Peoples National Bank v. Schepflin, 73 N.J.L. 29, 35 (Sup. Ct. 1905).
If, in contrast, the note had been issued in payment of a fee to an unlicensed real estate broker, it would have been deemed enforceable as a negotiable instrument by a holder in due course. Modern Industrial Bank v. Taub, 134 N.J.L. 260 (E. & A. 1946).
*398 It is therefore perceived that the pivotal point of inquiry is whether the particular instrument is utterly void ab initio or whether it emanates from a transaction merely malum prohibitum and is thereby offensive to a phase of public policy. If void, the instrument is assuredly nonnegotiable and is not enveloped by the Negotiable Instruments Act. If, however, the instrument should be tainted in that it is rooted in an illegal transaction, or initially based upon an illegal consideration, the title of the holder in due course is under the provisions of the statute invulnerable. Modern Industrial Bank v. Taub, supra.
In the latter instance, if considered in the view of public policy, the indescribable utility of the untrammeled and unencumbered negotiation of commercial paper predominates.
Nevertheless, it is not rationalistic to believe that the statute relating to such instruments was intended to have void obligations cleansed of their inherent invalidity by merely passing through the channels of trade.
Perhaps it can be said that every subsisting principle of the common law and every extant statute is expressive of public policy. And so, the mantle of protection with which the law has traditionally clothed infants and the insane may be characterized as a garment of public policy.
An insane person is not held amenable to the criminal laws. In this respect he is not held responsible for offenses committed against society and the government itself. Why? Because he is mentally incapable of discriminating between that which is right and that which is wrong.
If this defendant had not signed the note or if some person had forged his signature thereto, certainly he would not have incurred the alleged liability. R.S. 7:2-23. It would seem logically to follow that a person who at the time of placing his signature on the instrument was so bereft of reason that he was incapable of consciously understanding the nature, import, and effect of his act is not a "maker" within the comprehension of the statute.
There is a discernible distinction in their relationship toward an innocent holder between those who knowingly and *399 deliberately utilize a negotiable instrument in the pursuit of an illegal transaction and those who lacked the mental capacity to contract at all. The authors of the legislation indirectly recognized the element of capacity to contract in supplying certain warranties. See R.S. 7:2-65.
In the absence of some unequivocal expression in the statute to the contrary, the basic rule applies that where there is not the mental capacity to comprehend and understand, there is not the capacity to make a valid contract.
In general all contractual engagements must be pursued with the premonitory realization that the enforceability of the obligation fundamentally arises from the mental capacity and competency of the party to contract.
In the stated circumstances of the present case, the plaintiff in our opinion was not entitled to recover. The judgment is affirmed.